

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

NOV 12 2015

ARTHUR JOHNSTON

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

JONDA HENRY AND AMY SMITH                                    **PLAINTIFFS**

VS.                          CIVIL ACTION NO. **3:15-cv-00762-HT2-LRA**

JACKSON LEWIS P.C. (FORMERLY                                 **DEFENDANTS**
JACKSON LEWIS L.L.P.), WILLIAM B.
WAHLHEIM, JR., MAYNARD COOPER
& GALE, P.C., JOHN DAVID COLLINS,
and OLLIE A. CLEVELAND, III

### (Jury Trial Requested)

# <u>AMENDED COMPLAINT</u>

Come now the plaintiffs, Jonda Henry and Amy Smith, and in support of this their action

for damages against the defendants, who are named heretofore, respectfully allege the following:

## I.

## <u>SUMMARY</u>

1.     Plaintiffs' claims alleged herein arise out of Defendants' negligence and bad faith

in representing Plaintiffs Smith and Henry as their attorneys during the course of three related

cases: *Rader, et al. v. Bruister, et al.*, Nos. 10-95 and 13-1081 (S.D. Miss.) (the "Rader ESOP

Action"), *Solis v. Bruister, et al.*, Nos. 10-77 and 13-1001 (S.D. Miss.) (the "DOL ESOP

Action"), and *Bruister, et al. v. Beazley Ins. Co. Inc., et al.*, No. 10-136 (S.D. Miss.) (the

"Insurance Coverage Action").

2.     In short, as set forth in more detail below, Defendants violated their most basic

professional obligations to Plaintiffs Smith and Henry by, amongst other things, failing to advise

their clients to accept any of numerous settlement offers within available policy limits, failing to

*page 1*

accurately advise them about their potential exposure and the risks they faced proceeding to trial, providing them with inaccurate advice and information about Defendants' own conflicts, putting the interests of their other clients ahead of Plaintiffs' interests, or participating in and/or failing to prevent other Defendants from engaging in this misconduct.

3.      As a result of Defendants' misconduct, Smith and Henry were denied the opportunity to settle the claims against them in the Rader ESOP Action and the DOL ESOP Action (together, the "ESOP Actions") within available liability insurance policy limits. Instead of a favorable settlement, Plaintiffs Smith and Henry were ultimately found liable in the ESOP Actions and judgments were awarded against them in excess of $4.5 million as well as an award of attorneys' fees and costs in excess of $3 million. In addition, Defendants misconduct has caused Plaintiffs Smith and Henry severe emotional harm and distress by subjected them to years of unnecessary stress from participating in litigation and trial and as a result of the massive judgments entered against them. Furthermore, because Defendants' intentionally and wantonly and recklessly violated the fiduciary duties they owed to their clients—or knowingly stood by and allowed such misconduct to occur—Defendants should be subject to an award of punitive damages to discourage similar misconduct.

## II.

## PARTIES

4.      Plaintiff Jonda Henry ("Henry") is an individual residing in Meridian, Mississippi.

5.      Plaintiff Amy Smith ("Smith") is an individual residing in Panama City Beach, Florida.

6.      Defendant Jackson Lewis P.C. (formerly Jackson Lewis L.L.P.) ("Jackson Lewis") is a law firm and a Pennsylvania professional corporation headquartered in White Plains, New York.

7.      Defendant Maynard Cooper & Gale, P.C. ("Maynard Cooper") is a law firm and an Alabama professional corporation headquartered in Birmingham, Alabama.

8.      Defendant William B. Wahlheim, Jr. ("Wahlheim") is an attorney. At all relevant times, Wahlheim practiced law with the law firm Maynard Cooper.   Wahlheim is a member of the Alabama bar, and, on information and belief, resides in Alabama.

9.      Defendant John David Collins ("Collins") is an attorney. At all relevant times, Collins practiced law with the law firm Maynard Cooper.   Collins is a member of the Alabama bar, and, on information and belief, resides in Alabama.

10.      Defendant Ollie A. Cleveland, III ("Cleveland") is an attorney. At all relevant times, Cleveland practiced law with the law firm Maynard Cooper.   Cleveland is a member of the Alabama bar, and, on information and belief, resides in Alabama.

11.      Each of the Defendants named herein represented Plaintiffs Smith and Henry in the Rader ESOP Action and/or the DOL ESOP Action.

### III.

### JURISDICTION AND VENUE

12.      The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and all Plaintiffs and Defendants are citizens of different states. Accordingly, this Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a).

13.     This Court has specific personal jurisdiction over all Defendants because they took the actions described herein in this district and/or directed their conduct towards this district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## IV.

## FACTS

**A.     Background**

      **1.     Bruister and Associates, Inc. and the Plans**

15.     Bruister and Associates, Inc. ("BAI") (later Southeastern Ventures, Inc.) was a Mississippi corporation with its principal place of business in Meridian, Mississippi. BAI was founded by Herbert Bruister, who was BAI's president from its incorporation in July of 1992 until its dissolution in December of 2009.

16.     BAI was an installer and servicer of satellite-television equipment. At all relevant times, BAI's only customer was DirecTV.

17.     BAI established two ERISA-covered employee pension benefit plans for the benefit of its employees, the Bruister & Associates Employee Stock Ownership Plan (the "ESOP") and the Bruister & Associates Eligible Individual Account Plan (the "EIAP"). The assets of the ESOP and EIAP were held in the Bruister & Associates Employee Stock Ownership Trust (the "ESOT"). The ESOP, EIAP and ESOT are referred to herein as the "Plans."

18.     Between 2002 and 2005, Bruister sold 100% of BAI's shares to the Plans in five transactions (the "ESOP Transactions").

19.     The final three ESOP transactions closed on December 21, 2004, September 13, 2005, and December 13, 2005. In each of these transactions, the Plans acquired BAI stock from Bruister or the Bruister Family Limited Liability Company ("BFLLC"), a Mississippi Limited Liability company created by Bruister to hold assets for himself and his wife. By December 13, 2005, the Plans had acquired 100% of the outstanding shares of BAI.

20.     Bruister, along with Plaintiffs Henry and Smith, were trustees for the Plans who approved the ESOP Transactions that occurred while they were trustees.

21.     BAI ceased operations in August of 2008.

### 2.     The ESOP Actions

#### a.     *The Rader ESOP Action*

22.     On January 27, 2010, Joel Rader and Vincent Sealey (the "Rader Plaintiffs"), two former employees of BAI and participants in the Plans, filed a complaint in the United States District Court for the Eastern District of California (the "Rader ESOP Action").

23.     The Rader Plaintiffs alleged violations of ERISA, and named Bruister, Smith, Henry and BFLLC, among others, as Defendants. The Rader Plaintiffs alleged that Bruister, Henry, Smith and BFLLC caused the Plans to engage in the December 21, 2004, September 13, 2005, and December 13, 2005 ESOP Transactions, and had thereby breached their ERISA fiduciary duties with respect to the Plans and engaged in transactions with assets of the Plans that were prohibited by ERISA, and/or benefitted from those breaches or prohibited transactions. In particular, the Rader Plaintiffs alleged that the Plans had paid more than Fair Market Value ("FMV") for the BAI stock that it purchased in the December 21, 2004, September 13, 2005, and December 13, 2005 ESOP Transactions.

24.     On May 27, 2010, the Rader ESOP Action was transferred from the Eastern District of California to the United States District Court for the Southern District of Mississippi, and was assigned the docket number 10-95.

### b.     The DOL ESOP Action

25.     On April 29, 2010, the Secretary of Labor filed a complaint in the United States District Court for the Southern District of Mississippi (the "DOL ESOP Action") against Bruister, Smith, Henry, BAI and J. Michael Bruce ("Bruce"), who served as a fiduciary for first two ESOP Transactions.

26.     Like the claims in the Rader Action, the DOL ESOP Action alleged that Bruister, Henry and Bruce had breached their ERISA fiduciary duties with respect to the Plans and engaged in transactions with assets of the Plans that were prohibited by ERISA, and/or benefitted from those breaches or prohibited transactions. However, the DOL ESOP Action asserted that all five ESOP Transactions were unlawful, and prohibited and that the Plans had paid more than FMV in all five ESOP Transactions.

27.     The DOL ESOP Action was assigned the docket number 10-77.

### c.     Consolidation and Trial of the ESOP Actions

28.     On December 26, 2013, the Rader ESOP Action and the DOL ESOP Action were transferred to the Northern Division of the Southern District of Mississippi. As part of the transfer, each case received a new docket number: the Rader ESOP Action was assigned No. 13-1081 and the DOL ESOP Action was assigned No. 13-1001.

29.     On December 31, 2013, the Rader ESOP Action was consolidated with the DOL ESOP Action.

30.     The ESOP Actions, as consolidated, were tried in a bench trial in front of United States District Judge Daniel P. Jordan from August 4, 2014 until August 28, 2014.

31.     On October 16, 2014, Judge Jordan entered an order and judgment (the "Judgment") in favor of the Rader Plaintiffs and the DOL, finding that Bruister, Smith and Henry were liable for breaching their ERISA fiduciary duties.

32.     Pursuant to the Judgment, Bruister, Smith and Henry were held jointly and severally liable in the amount of $4,504,605.30.

### 3.     The Insurance Policies, the Coverage Dispute, and the Coverage Action

#### a.     *The Insurance Policies*

33.     Beazley Insurance Company, Inc. ("Beazley") issued a 'claims made' fiduciary liability insurance policy numbered V15LC308PNDM (the "Beazley Policy") effective March 28, 2008, through March 28, 2009. By endorsement, Beazley extended the policy period to September 28, 2009. Effective November 14, 2009, Beazley converted the Beazley Policy to a run-off policy thereby further extending the policy period.

34.     The Beazley Policy provided indemnity coverage for liability arising from "Claims" for a "Wrongful Act" first made against any "Insured Person" or "Insured Organization" during the policy period. As written, the Beazley Policy provided a $5,000,000 aggregate limit of liability, with a $25,000 retention for each claim.

35.     The Beazley Policy also required Beazley to defend the Insureds against any Claim, including payment of defense costs incurred by the Insureds. The Beazley Policy provided an additional defense limit of $500,000 for payment of defense costs.

36.     Plaintiffs Henry and Smith were both Insureds under the Beazley Policy.

37.     In addition, Axis Insurance Company ("Axis") issued an excess liability policy numbered MAN738475/01/2008 (the "Axis Policy"), which provided an additional $5 million of liability coverage on the same terms as the Beazley Policy.

38.     Plaintiffs Henry and Smith were both "Insured Persons" under the Beazley Policy, and as such they were also both insureds under the Axis Policy.

39.     Together the Beazley Policy and the AXIS Policy are the "Policies."

### b.     The Coverage Dispute

40.     At some time prior to February 17, 2010, Bruister, Henry, Smith and BAI tendered both the Rader ESOP Action and anticipated DOL ESOP Action to Beazley for coverage and defense under the Beazley policy.

41.     Attorney David Johanson ("Johanson"), an attorney involved at all times material in the matters giving rise to this lawsuit, and who practiced with the law firm Johanson Berenson, LLP until January of 2012, when he joined Defendant Jackson Lewis LLP as an equity partner, where he practiced until November of 2014, informed the DOL that Beazley had denied coverage for the DOL Action.

42.     On February 17, 2010, acting on behalf of Beazley, attorney Rachel Stern of the law firm Kaufman Borgeest & Ryan, LLP sent a letter to Johanson reserving Beazley's rights and setting forth its coverage position (the "Beazley Reservation") with respect to the Rader Action. The Beazley Reservation explained that:

> a.   Under the terms of the Beazley Policy, the Rader ESOP Action involved Wrongful Acts committed prior to the expiration of the policy period, and that, subject to certain exclusions, "it appears that coverage is available" for the Rader ESOP Action in the amount of $5 million, as well as an additional $500,000 of coverage for defense costs, subject to a $25,000 retention per claim;

b. As fiduciaries of the Plans, Bruister, Smith and Henry were "Insured Individuals" under the terms of the Beazley Policy and that "coverage is afforded" to them "subject to the terms, conditions and exclusions of the Policy;"

c. BFLLC was not an insured under the Beazley Policy;

d. Chris Rillo ("Rillo") of the law firm Schiff Hardin, LLP was "approved to serve as defense counsel" for Bruister;

e. Separate, independent counsel was approved for Henry and Smith, in particular, Greg Braden, a well-known ERISA defense attorney from Atlanta, Georgia with the firm Morgan Lewis & Bockius LLP; but

f. that "[a]s we have previously advised, Beazley has not consented to the retention of [Johanson] as defense counsel."

43.    In the letter, Beazley explained that it had "appointed separate defense firms to represent Mr. Bruister… as well as Smith and Henry. Beazley's decision to appoint separate counsel [was] based on potential conflicts between the defendants…."

44.    Johanson, however, demanded that Mr. Braden submit to Johanson's direction regarding the course of the litigation, and pressured Smith and Henry to support Johanson's view; in doing this Johanson coerced and deceived Smith and Henry.

45.    Braden refused Johanson's terms and ultimately never represented Smith or Henry.

c.    *The Insurance Coverage Action*

46.    On August 20, 2010, Bruister, Smith, Henry, Bruce, BAI, the Plans, and BFLLC (the "Coverage Plaintiffs") initiated a civil action against Beazley and Axis in the United States

District Court for the Southern District of Mississippi, styled *Bruister, et al. v. Beazley Ins. Co. Inc., et al.*, No. 10-136 (S.D. Miss.) (the "Coverage Action").

47.     In the Coverage Action, the Coverage Plaintiffs asserted causes of action for breach of the duty to defend and indemnify and pay defense costs, breach of contract, bad faith/tortious breach of the implied covenant of good faith and fair dealing, unfair business practices, and sought injunctive and declaratory relief as well as independent counsel with respect to their claims against Beazley.

48.     The Coverage Plaintiffs sought general, special and punitive damages, as well as attorneys' fees, costs, prejudgment interest from Beazley.

49.     Bruister, Smith, Henry, Bruce, BAI, the Plans, BFLLC, Beazley and Axis, among others, executed a Confidential Settlement Agreement and Release (the "Coverage Settlement") which resolved the Coverage Action.

50.     The Coverage Settlement was, by its terms, effective "as of December 1, 2011."

51.     The Coverage Settlement was executed in counterparts and signed by each party between January 14, 2012 and January 31, 2012.

52.     The Coverage Settlement contained, among others, a representation that "the combined amount of the Unpaid DOL Defense Costs and the Pre-Moeller Status Unpaid Rader Defense Costs [were] no more than $715,000 in the aggregate," and that "the combined amount of the Paid and/or Outstanding Rader Defense Costs [were] no more than $2,514,000.00 in the aggregate."

53.     In pertinent part, the Coverage Settlement contained the following terms:

a.   All claims and counter-claims in the Coverage Action would be dismissed;

b. Beazley and Axis would withdraw their Reservations of Rights and pay defense costs as well as any settlement or judgment in the Rader and/or DOL Actions subject to the limits of liability under the Policies;

c. The limits of liability for the Beazley Policy were reduced to $4 million from $5 million, so that with the $500,000 defense reserve, Beazley's total potential responsibility would be no more than $4.5 million;

d. The limits of liability for the Axis Policy were reduced to $3.75 million from $5 million;

e. BFLLC was added as an insured to the Policies; and

f. Beazley and Axis agreed that Johanson could serve as counsel and that they would reimburse Johanson's fees and costs.

### 4.   Defendants' Representation of Plaintiffs Henry and Smith

54.   Defendant Wahlheim, an attorney with the law firm, Maynard Cooper, one of the Defendants in this lawsuit, moved for admission *pro hac vice* to represent Henry and Smith in the Rader ESOP Action on April 8, 2010, his motion was granted by the Eastern District of California on April 13, 2010. Wahlheim's motion was supported by an attorney named Peter S. Fruin, also of Defendant Maynard Cooper, who was a member of the bar in California.

55.   After the Rader ESOP Action was transferred to the Southern District of Mississippi, Defendant Wahlheim and Defendant Collins, who was also an attorney at Defendant Maynard Cooper, moved for admission *pro hac vice* to continue their representation of Henry and Smith on June 17, 2010. Their motion was granted soon thereafter. Their motion was supported by Defendant Cleveland, also of Defendant Maynard Cooper, who was a member of the bar in Mississippi.

56.     After the ESOP Actions were consolidated, Defendants Wahlheim, Cleveland and Collins made a motion to withdraw their representation of Henry and Smith on February 21, 2014. Their motion was granted on March 7, 2014.

57.     In their motion to withdraw, Wahlheim, Cleveland, and Collins represented that "David R. Johanson, with the law firm of Jackson Lewis, P.C.... [is] currently representing Ms. Smith and Ms. Henry in the Consolidated Action" and that consequently, the withdrawal of Wahlheim, Cleveland and Collins "will not require [Ms. Smith and Ms. Henry] to seek other representation and therefore, will not result in any prejudice or delay to the Court or any parties."

58.     In the DOL ESOP Action, Johanson and also Douglas A. Rubel ("Rubel"), an attorney who practiced with the law firm Johanson Berenson, LLP until January of 2012, when he joined Defendant Jackson Lewis, LLP, where he practiced until November of 2014, represented Henry and Smith from the time the case was filed on May 10, 2010.  Johanson and Rubel represented Bruister and BFLLC as well.

59.     On January 16, 2012, Johanson and Rubel filed notice that they had joined Defendant Jackson Lewis.

60.     After the ESOP Actions were consolidated, two more attorneys who were working for Defendant Jackson Lewis moved to withdraw their representation of Henry, Smith, Bruister and BFLLC on January 27, 2014. Their motion was granted on January 29, 2014.

61.     In said attorneys' motion to withdraw, they represented that "Other attorneys, including David R. Johanson, with the law firm of Jackson Lewis P.C., are representing Herbert C. Bruister, Amy O. Smith, Jonda C. Henry, and [BAI]" and that, consequently, the withdrawal of those two individual attorneys "will not require these Defendants to seek other representation and, therefore, will not result in any delay."

### 5.     Defendants' Representation of Bruister and Bruister's Entities

#### a.     *Johanson's Role in Structuring the ESOP Transactions*

62.     Johanson, Markun and JB represented Bruister and BAI in the ESOP Transactions. Additionally, Johanson, Markun and JB represented Bruister and other entities owned by Bruister for tax planning.  Johanon, Markun and JB were instrumental in guiding Bruister and BAI into creating the ESOPs and orchestrating the ESOP Transactions.  Johanson, Markun and JB held themselves out as experts with respect to ERISA in general and ESOPs in particular.

63.     Accordingly, Johanson, Markun and JB knew or should have known that the ESOP Transactions were for more than Fair Market Value, were not completed with proper prudence and were otherwise not in compliance with applicable legal standards.

64.     Smith and Henry relied heavily on Johanson's expertise and ongoing reassurances that the ESOP Transactions were appropriate.

65.     In its October 16, 2014 Order, this Court ruled that the ESOP Transactions did, in fact, violate ERISA, and found, among other things, that:

     a.  Johanson was the driving force behind actions taken by the Plans in each ESOP Transaction;

     b.  Each ESOP Transaction was carefully engineered, structured, and controlled by Johanson;

     c.  Johanson was Bruister's attorney and Bruister deferred to Johanson on all matters related to the ESOP Transactions;

     d.  Both Bruister and Johanson viewed Johanson as Bruister's attorney;

     e.  Johanson acted with apparent, if not actual, authority as Bruister's agent; and,

    f.    Johanson advanced Bruister's personal interests in the ESOP Transactions;

66.    Bruister and Johanson's relationship extended beyond that of client and attorney, however. Johanson became involved with Bruister's personal finances and various business interests. Johanson, Markun and their law firms served as counsel for BAI, provided tax-and-estate planning to Bruister, advised the BAI shareholders regarding "appropriate ownership transition," defended Bruister in a variety of lawsuits and various audits, advised Bruister regarding investment strategies, set up and then served as general counsel for Bruister's business entities including, but not limited to, BFLLC and Bruister Investment, LLC, and drafted lease agreements for Bruister and BAI.

67.    In addition, Bruister and Johanson were investors and business partners in certain business, including, but not limited to, Futuretek, LLC, BDJMP LLC and Best Pro Services, LLC. They were also co-owners of certain real property in Maryland.

68.    On information and belief, Johanson also represented Bruister personally to help Bruister protect his assets from potential judgment creditors.

    *b.*    ***Johanson Assumed the Representation of Bruister and BFLLC in the ESOP Actions***

69.    Initially, attorney Rillo represented Bruister and BFLLC in the Rader ESOP Action.

70.    On information and belief, however, Bruister wanted Johanson to represent him in the Rader ESOP Action as well, but Beazley refused to consent to Johanson's representation of Bruister or any of the other parties, including Smith and Henry.

71.    On March 2, 2011, Johanson and Rubel entered appearances on behalf of Bruister in the Rader ESOP Action.

72.     On March 8, 2011, Rillo made a motion to withdraw as counsel for Bruister. In his motion to withdraw, Rillo represented that Bruister "informed [them] that he desires to be represented by David Johanson...."

73.     Upon information and belief, Johanson agreed to undertake the representation of Bruister in the ESOP Actions without charge to Bruister on the basis that Johanson would pursue legal action on behalf of Bruister against Beazley and Axis to obtain payment of his legal fees and expenses.

74.     To facilitate Johanson obtaining payment for his legal services, Bruister authorized Johanson to institute a civil action against Beazley and Axis in Bruister's name and in the name of the Plans in an effort to force the Insurers to pay Johanson's fees for representing Bruister in the ESOP Actions.  Henry and Smith were coerced and misled by Johanson, so that they would agree to same.

75.     On or about November 14, 2014, Johanson and Rubel left Jackson Lewis and upon information and belief, Jackson Lewis paid Johanson a fee or commission from the fees paid and accumulated from the Coverage Settlement.

      **6.     Johanson and the Defendants Drained All Available Coverage on Their Own Fees and Defense Costs and Left Nothing Available to Pay For Settlement or for Henry and Smith's Eventual Liability**

76.     By the time of the Judgment in the ESOP Actions, however, the damage had been done. Defendants, including Jackson Lewis and Maynard Cooper and the other attorneys named as Defendants in this present lawsuit, had completely exhausted the insurance proceeds available under the Policies in defense costs, leaving nothing to satisfy the Judgment against Bruister, Smith, Henry or BFLLC.  Notably, neither Henry nor Smith were ever shown any attorney billings.

77.   Defendants and others collected at least the following attorney fees from the Policies, as follows:

| Firm | Attorney Fees |
|---|---|
| Johanson Berenson | $1,930,390.62 |
| Jackson Lewis | $3,430,604.15 |
| Maynard Cooper | $734,530.52 |
| Subtotal (fees collected by Defendants) | $6,095,525.29 |
| Other Attorney Fees | $915,944.15 |
| Attorney Fees collected by Johanson's Local Counsel | $755,996.51 |
| Litigation Expenses | $482,534.42 |
| Total fees and costs | $8,250,000.37 |
| Total Limits of Liability Under Coverage Settlement (see ¶¶ 61.C-61.D, *supra*) | $8,250,000.00 |

**B.     Defendants' and Others' Misconduct**

     **1.     Johanson's Conflicts of Interest**

78.   Johanson had at least the following conflicts of interest with respect to his representation of Smith and Henry:

    a.   As noted above, Johanson was the architect and prime mover behind the ESOP Transactions at issue in the ESOP Actions. Johanson structured the ESOP Transactions in a way that he knew violated ERISA, but used his legal knowledge to help disguise the illegal nature of the ESOP Transactions and used his purported expertise to reassure his clients, and Smith and Henry, that the ESOP Transactions did not violate the law.

    b.   Johanson had also structured numerous other similar ESOP transactions with ESOP owned companies throughout the United States, many of which, on information and belief, involved similar fiduciary misconduct and have

subsequently involved years of costly litigation that has ruined the fortunes and reputations of his clients and their employees.

c.   Consequently, Johanson had a significant personal and professional interest with respect to the legality of the ESOP Transactions that differed materially from his clients in the ESOP Actions.

d.   Johanson was a critical fact witness on nearly every issue involved in the creation of the ESOPs and the sale of BAI shares to the ESOPs.  As a purported ESOP expert and a person intimately involved with the facts, he knew, or should have known, that the ESOP Transactions would likely subject Henry and Smith to liability.  He was a crucial fact witness and his conflict should have been obvious.

e.   Moreover, Johanson had a vested interest in ensuring that Smith and Hennry never put together that it was Johanson that was the source of their legal difficulties, and that they had valuable malpractice and fraud claims against Johanson with respect to his advice concerning the legality of the ESOP Transactions prior to and during the ESOP Transactions themselves.

f.   In addition, Bruister, as the prime beneficiary of Johanson's misguided legal advice respecting the ESOP Transactions, had interests that varied considerably from Smith and Henry. Johanson's representation of Bruister (and his entities BAI and BFLLC) created an additional layer of conflict with respect to his representation of Smith and Henry.

79.     Johanson and his firms—Johanson Berenson and Jackson Lewis—should have refused to represent Smith and Henry due to these conflicts. Nevertheless, Johanson pressured Henry and Smith to retain him as their attorney in both ESOP Actions.

80.     In particular, Johanson and his firms advised Henry and Smith that he was the best person to represent them, despite the fact that he had little litigation experience or success, and despite the fact that a reasonably competent attorney would know that aligning Henry and Smith with Bruister throughout the litigation would be detrimental to their interests.

81.     On information and belief, however, Johanson was aware of all these conflicts, and knowingly and intentionally used his representation of Smith and Henry to exploit his own, and/or Bruister's, interests in each of these regards.

### 2.     The Defendants Knew, or Should Have Known About, Participation in and/or Failed to Stop or Remedy Johanson's Misconduct

82.     On information and belief, all Defendants knew, or should have known, of Johanson's conflicts of interest in representing Henry and Smith, including, but not limited to, his ongoing relationship with Bruister and role in orchestrating the ESOP Transactions and other similar transactions.

83.     Throughout its representation of Henry and Smith, Defendant Jackson LewisThad divided loyalties and placed the interest of Bruister and itself above the interests of Henry and Smith.

84.     Throughout their representation of Henry and Smith, Maynard Cooper, Wahlheim, Collins, and Cleveland had divided loyalties and placed their interests and the desires of Bruister and Jackson Lewis at its attorneys above the interests of Henry and Smith.

85.     Maynard Cooper, Wahlheim, Collins, Cleveland, Jackson Lewis, Johanson and Markun, Rubel, failed to independently advise Plaintiffs, but, instead, deferred to Johanson, an attorney they knew to be conflicted and who they reasonably should have known was incapable of competently and independently representing Plaintiffs.

86.     Although Maynard Cooper, Wahlheim, Collins and Cleveland, purported to be independent counsel for Plaintiffs, they, nevertheless, allowed Johanson and Jackson Lewis to determine what work they could perform and what actions would be acceptable.  For example, the Maynard Cooper defendants advised Plaintiffs that they could not settle their claims or accept a settlement offer without Bruister's approval; the Maynard Cooper defendants advised Plaintiffs that Johanson and Jackson Lewis would not permit them to take certain actions such as attend depositions because Johanson and Jackson Lewis wanted to preserve insurance proceeds to fund Bruister's defense to the detriment of Plaintiffs' indemnity; and the Maynard Cooper Defendants did not respond to settlement offers or present settlement offers to the insurance carriers for payment because Johanson and Jackson Lewis did not want to settle.

87.     Throughout the representation, Defendants undertook to represent Plaintiffs in matters for which they were unqualified and/or conflicted without properly disclosing the lack of qualifications or conflicts.

88.     Throughout the representation, the Defendants failed to exercise their own independent professional judgment and failed to honor their professional obligations to Henry and Smith.

89.     Johanson, Johanson Berenson and Jackson Lewis pressured Henry and Smith to retain Johanson and his firms to represent them based on the false premise that Johanson and his firms would mount an efficient defense, thereby preserving insurance proceeds to pay for a

settlement or indemnity.  This included making disparaging remarks about other potential counsel claiming that the other counsel would merely drain the insurance policies, when, on information and belief, Johanson's own goal was to drain the insurance policies.

90.     Johanson even threatened Henry and Smith that if they did not choose him or a lawyer who would agree to let him control to represent him in the Rader ESOP Action – for which the insurance carrier was paying defense costs under a reservation of rights – that he would withdraw as their attorneys in the DOL ESOP Action, for which, at the time of this threat, the insurance carriers had refused to pay defense costs.  In essence, he told them that he would leave them without a lawyer in the DOL ESOP Action unless they agreed to a lawyer of Johanson's choosing in the Rader ESOP Action.

91.     Beazley had selected a lawyer from Atlanta to represent Henry and Smith and requested through Johanson and Johanson Berenson that Henry and Smith approve this lawyer. Prior to the time when Henry and Smith could approve the selection of lawyers, Henry and Smith were advised that they would be represented by William Wahlheim and Maynard Cooper. Upon information and belief, Johanson intervened to have Wahlheim and Maynard Cooper appointed as attorneys for Henry and Smith because Wahlheim and Maynard Cooper had agreed to let Johanson and his firm control the litigation and the insurance policy proceeds.

92.     Defendants pressured Plaintiffs to reject at least one settlement offer because not enough money would be left to defend Bruister.  Defendants garnered this rejection, however, without disclosing that Bruister could be included in the same settlement if he provided financial disclosures.

93.     Defendants provided lies and misinformation to Plaintiffs, and/or or allowed for lies and misinformation to be provided to Plaintiffs, about the motivations of the Rader Plaintiffs

and the DOL and their exposure in the ESOP Actions, in efforts to convince Plaintiffs to remain aligned with Bruister and to allow the Defendants to continue to bill against and drain the insurance proceeds to the detriment of Plaintiffs.

94.    Other examples of negligence and malfeasance of Defendants include, without limitation, the following:

a.  Failing to fully or sufficiently advise Plaintiffs about their rights to insurance coverage and indemnity independent of any agreement or acquiescence of Bruister or his counsel;

b.  Failing to fully or sufficiently advise Plaintiffs about all relevant facts and law relating to their exposure to a judgment resulting from the ESOP Transactions;

c.  Intentionally or negligently misrepresenting to Plaintiffs that the Rader Plaintiffs and the DOL were not after them and that they would not suffer any harm as a result of remaining aligned with and subordinated to the litigation and settlement strategies of Bruister and his counsel;

d.  Failing to use the insurance proceeds to ensure that Plaintiffs were released from all or at least of portion of their liability through a settlement;

e.  Failing to fully or sufficiently inform Plaintiffs of all relevant developments in the various lawsuits and the impact these developments could have had on them;

f.  Defending the case in a wasteful and duplicative manner, thereby exhausting the policy limits on defense rather than ensuring that some policy proceeds were available for indemnity;

g.  Failing to execute Plaintiffs' explicit instructions to accept a settlement offer within the available insurance policy limits;

h.  Failing to respond to several settlement offers within policy limits;

i.  Failing provide all information relevant to Plaintiffs so that they could make an informed decision whether to accept certain settlement offers within policy limits; and,

j.  Failing to insist or recommend that Plaintiffs accept or the insurance carriers pay any of a number of partial or full settlement offers within the policy limits.

95.   In addition, upon information and belief, Johanson and Jackson Lewis diverted insurance policy proceeds from the defense and indemnity of Henry and Smith to the defense of an unrelated Fair Labor Standards Act lawsuit in which Jackson Lewis was representing Bruister and BAI and for which neither Bruister nor BAI had insurance coverage.  This was done without the knowledge or consent of the Plaintiffs.

96.   During the course of the ESOP Actions, the plaintiffs in those actions made numerous offers within the remaining limits of the Insurance Policies to settle their claims against Smith and Henry individually or jointly or together with all of the defendants in the ESOP Actions. All of these offers were rejected or were never responded to, at least in part because of the misinformation that Defendants provided to Plaintiffs regarding their exposure and their rights under the Policies.

97.   Similarly, upon information and belief, Johanson, Rubel and Jackson Lewis stymied settlement negotiations that would have resulted in a settlement inside the policy limits by insisting that any settlement release Bruister and BAI from any liability in the unrelated FLSA lawsuit.  This was done without the knowledge or consent of the Plaintiffs.

98.     In addition, Johanson, Rubel, Johanson Berenson and Jackson Lewis represented Plaintiffs during the Insurance Coverage Action and with respect to the Insurance Coverage Settlement. These Defendants failed to properly advise Plaintiffs about the rights they were surrendering as part of the Insurance Coverage Settlement, and failed to disclosure the material conflict of interest they faced in that transaction—because until Beazley and Axis consented to these Defendants representing any parties in the Coverage Settlement, they had no right to recover their legal fees thereby.

### C.     Defendants' Concealment of Plaintiffs' Claims

99.     As explained heretofore, Defendants made, or did not correct, numerous misstatements of fact to Plaintiffs regarding Plaintiffs' exposure in the ESOP Actions and legal rights with respect to the Policies and the ESOP Actions.  Based on Plaintiffs' implicit trust in the advice they received from their legal counsel, these misstatements effectively concealed from Plaintiffs the great expense and reputational damage they faced from an adverse judgment and the ease at which they could have extricated themselves had Defendants properly advised them with respect to the within policy limits settlements offers and options that were available. Plaintiffs were entitled to rely on the advice they received from their counsel in this regard.

100.     In addition, Defendants' intentional misstatements and omissions thwarted Plaintiffs' efforts to learn about and protect their legal rights and interests during the course of the ESOP Actions through misdirection and intimidation.

101.     Plaintiffs only began to become aware of the scope of Defendants' misconduct after the entry of the Judgment against them in October of 2014, at which time they began to seek independent counsel to learn what rights and remedies they had available to them and that they could use in bargaining with their judgment creditors from the ESOP Actions.

V.

**CAUSES OF ACTION**

A.      **Attorney Malpractice**

      1.      **Negligence**

102.     The foregoing allegations are expressly incorporated herein in full as if fully restated.

103.     Each Defendant had an attorney-client relationship with Plaintiffs during the course of the ESOP Actions.

104.     Each Defendant negligently failed to fulfill the standard of care imposed on attorneys in Mississippi by, among other things, failing to properly advise Plaintiffs with respect to their exposure in the ESOP Actions, failing to advise Plaintiffs to accept reasonable settlement offers within available policy limits, failing to advise Plaintiffs to otherwise seek reasonable settlement avenues within the available limits, advising Plaintiffs to reject pending settlement offers within the available limits, failing to fully, properly and accurately advise Plaintiffs with respect to their rights under the Policies, failing to fully inform or properly advise Plaintiffs regarding Defendants' own conflicts of interest and the conflicts of interest between themselves and Bruister, BAI and BFLCC, and by failing to advise Plaintiffs with respect to Defendants' rapid exhaustion of the available insurance proceeds and the impact that would have on Plaintiffs' ability to settle the claims against them or pay a judgment in the event they were found liable in the ESOP Actions.

105.     Defendants' negligent misconduct proximately injured Plaintiffs by, among other things, preventing them from reaching a settlement within the policy limits and instead

subjecting them to significant personal liability of at least $7.5 million as well as emotional and reputational harm in an amount to be determined at trial.

### 2.    Breach Of Fiduciary Duty

106.    The foregoing allegations are expressly incorporated herein in full as if fully restated.

107.    Each Defendant had an attorney-client relationship with Plaintiffs during the course of the ESOP Actions.

108.    Each Defendant breached the fiduciary duties they owed to Plaintiffs as their attorney by, among other things, failing to properly advise Plaintiffs with respect to their exposure in the ESOP Actions, failing to advise Plaintiffs to accept reasonable settlement offers within available policy limits, failing to advise Plaintiffs to otherwise seek reasonable settlement avenues within the available limits, advising Plaintiffs to reject pending settlement offers within the available limits, failing to fully, properly and accurately advise Plaintiffs with respect to their rights under the Policies, failing to fully inform or properly advise Plaintiffs regarding Defendants' own conflicts of interest and the conflicts of interest between Plaintiffs and Bruister, BAI and BFLLC, and by failing to advise Plaintiffs with respect to Defendants' rapid exhaustion of the available insurance proceeds and the impact that would have on Plaintiffs' ability to settle the claims against them or pay a judgment in the event they were found liable in the ESOP Actions.

109.    In addition, each Defendant breached the fiduciary duties they owed to Plaintiffs as their attorney by, among other things, concealing from or misleading Plaintiffs with respect to the extent of their exposure in the ESOP Actions, concealing from or misleading Plaintiffs with respect to the availability or advisability of reasonable settlement offers within available policy

limits, concealing from or misleading Plaintiffs with respect to the availability or advisability of reasonable settlement avenues within the available limits, advising Plaintiffs to reject pending settlement offers within the available limits, concealing from or misleading Plaintiffs with respect to their rights under the Policies, concealing from or misleading Plaintiffs with respect to Defendants' own conflicts of interest and the conflicts of interest between Plaintiffs and Bruister, BAI and BFLLC, and by concealing from or misleading Plaintiffs with respect to Defendants' rapid exhaustion of the available insurance proceeds and the impact that would have on Plaintiffs' ability to settle the claims against them or pay a judgment in the event they were found liable in the ESOP Actions.

110.   Defendants' breaches of fiduciary duty proximately caused Plaintiffs injury by, among other things, preventing them from reaching a settlement within the policy limits and instead subjecting them to significant personal liability of at least $7.5 million as well as emotional and reputational harm in an amount to be determined at trial.

### 3.   Breach Of Contract

#### a.   *Covenants Of Good Faith And Fair Dealing*

111.   The foregoing allegations are expressly incorporated herein in full as if fully restated.

112.   Each Defendants' misconduct alleged herein violated the obligations imposed on them pursuant to the attorney-client agreement(s) entered into by the Defendant Attorneys and Plaintiffs Henry and Smith.

113.   Each Defendants' misconduct alleged herein violated the duty of good faith and fair dealing implied in every contract in Mississippi.

114.   Defendants' breaches of these contract terms and violations of the duty of good faith and fair dealing proximately caused Plaintiffs injury by, among other things, preventing them from reaching a settlement within the policy limits and instead subjecting them to significant personal liability of at least $7.5 million as well as emotional and reputational harm in an amount to be determined at trial.

### 4.   Fraud

115.   The foregoing allegations are expressly incorporated herein in full as if fully restated.

116.   Each Defendant had an attorney-client relationship with Plaintiffs during the course of the ESOP Actions, and thereby owed a fiduciary duty to Plaintiffs that required Defendants to fully explain to Plaintiffs their legal rights and the relevant factual circumstances material to the scope of the representation.

117.   Each Defendant made numerous affirmative misrepresentations to, or omitted information from, Plaintiffs with respect to the extent of their exposure in the ESOP Actions, with respect to the availability or advisability of reasonable settlement offers within available policy limits, with respect to the availability or advisability of reasonable settlement avenues within the available limits, with respect to Plaintiffs' rights under the Policies, with respect to Defendants' own conflicts of interest and the conflicts of interest between Plaintiffs and Bruister, BAI and BFLLC, and with respect to Defendants' rapid exhaustion of the available insurance proceeds and the impact that would have on Plaintiffs' ability to settle the claims against them or pay a judgment in the event they were found liable in the ESOP Actions.

118.   Defendants were under a legal duty to provide complete and accurate information and advice to Plaintiffs with respect to each of these issues and facts.

119.   Defendants affirmatively concealed the truth from Plaintiffs through misdirection, intimidation, and outright lies regarding their rights and liabilities.

120.   Each of these facts that were affirmatively misrepresented or concealed were material to Plaintiffs' evaluation of the strengths and weaknesses of their defenses and evaluation of whether accepting or proposing a settlement offer prior to the Judgment was in their best interests.

121.   Defendants were aware of the truth of these matters but nevertheless intentionally and knowingly misled Plaintiffs for Defendants' great enrichment and to Plaintiffs' great detriment.

122.   Defendants' intentional and knowing misrepresentations were intended to prevent Plaintiffs from protecting their legal rights or reaching a settlement in order to protect Bruister's interests and/or to allow Defendants' to continue exhausting the available policy limits.

123.   Plaintiffs were not lawyers and were ignorant of the truth or falsity of Defendants' misrepresentations and omissions, and had no independent basis for understanding these issues apart from the advice and information provided by Defendants' themselves.

124.   As Defendants' clients, Plaintiffs had a right to rely on and in fact did rely on Defendants' misrepresentations and omissions.

125.   Defendants' fraudulent misrepresentations and omissions proximately caused Plaintiffs injury by, among other things, preventing them from reaching a settlement within the policy limits and instead subjecting them to significant personal liability of at least $7.5 million as well as emotional and reputational harm in an amount to be determined at trial.

### 5.    Negligent Misrepresentation

126.    The foregoing allegations are expressly incorporated herein in full as if fully restated.

127.    Each Defendant made numerous affirmative misrepresentations to, or omitted information from, Plaintiffs with respect to the extent of their exposure in the ESOP Actions, with respect to the availability or advisability of reasonable settlement offers within available policy limits, with respect to the availability or advisability of reasonable settlement avenues within the available limits, with respect to Plaintiffs' rights under the Policies, with respect to Defendants' own conflicts of interest and the conflicts of interest between Plaintiffs and Bruister, BAI and BFLLC, and with respect to Defendants' rapid exhaustion of the available insurance proceeds and the impact that would have on Plaintiffs' ability to settle the claims against them or pay a judgment in the event they were found liable in the ESOP Actions.

128.    Each Defendant had an attorney-client relationship with Plaintiffs during the course of the ESOP Actions, and therefore each Defendant had a duty to exercise the degree of diligence and expertise that the public is entity to expect of an attorney, including investigating and determining the truth of each of the matters set forth herein and fully, accurately and timely communicating that information to Plaintiffs in addition to appropriate legal advice necessary for them to understand the strengths and weaknesses of their situation and make appropriate decisions in reliance on that information and advice.

129.    Each of these facts that were affirmatively misrepresented or omitted were material to Plaintiffs' evaluation of the strengths and weaknesses of their defenses and evaluation of whether accepting or proposing a settlement offer prior to the Judgment was in their best interests.

130.    Plaintiffs were not lawyers and were ignorant of the truth or falsity of Defendants' misrepresentations and omissions, and had no independent basis for understanding these issues apart from the advice and information provided by Defendants' themselves.

131.    As Defendants' clients, Plaintiffs had a right to rely on and in fact did rely on Defendants' misrepresentations and omissions.

132.    Defendants' negligent misrepresentations and omissions proximately caused Plaintiffs injury by, among other things, preventing them from reaching a settlement within the policy limits and instead subjecting them to significant personal liability of at least $7.5 million as well as emotional and reputational harm in an amount to be determined at trial.

### 6.    Intentional Infliction Of Emotional Distress

133.    The foregoing allegations are expressly incorporated herein in full as if fully restated.

134.    Defendants' conduct, which included, but are not necessarily limited to, their failing to advise their clients, Plaintiffs' Henry and Smith, to accept any of numerous settlement offers within available policy limits, their failure to accurately advise them about their potential exposure and the risks they faced proceeding to trial, their providing Plaintiffs with inaccurate advice and information about Defendants' own conflicts, their putting the interests of their other clients ahead of Plaintiffs' interests, and/or participating in and/or failing to prevent any Defendants from engaging in this misconduct was both intentional and reckless; said actions of Defendants was also extreme and outrageous, under the totality of the circumstances.

135.    As a result of Defendants' actions, Plaintiffs Henry and Smith have both suffered severe emotional distress over the several years during which they have had to deal with the

consequences of Defendants' said extreme and outrageous conduct and seek compensation from Defendants, accordingly.

## VII.

### JURY TRIAL

144.    Plaintiffs demand that this case be tried in front of a jury.

## VIII.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.    For compensatory damages in an amount to be determined at trial;

B.    For punitive damages;

C.    For attorney fees;

D.    For all court costs and all other costs of this litigation; and

E.    For such equitable or other relief as the Court deems just.

RESPECTFULLY SUBMITTED on November 11th, 2015.

JONDA HENRY AND AMY SMITH,
PLAINTIFFS

By: _____
        Jonathan P. Barrett, MSB #102426

BARRETT LAW, PLLC
121 Colony Crossing, Suite D
Madison, MS 39110
601-790-1505 office | 769-300-0922 fax
jpb@barrettlawms.com
*Attorney for Plaintiffs*